## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROADCAST MUSIC, INC.; SONY/ATV  SONGS LLC )<br>d/b/a SONY/ATV TREE PUBLISHING; VELVET )<br>APPLE MUSIC; WARNER-TAMERLANE )<br> PUBLISHING CORP.; CYANIDE PUBLISHING; )<br>RATTMUSIC; TIME COAST MUSIC; RIGHTSONG )<br>MUSIC, INC.; SHIRLEY EIKHAR USA MUSIC;  EMI )<br>BLACKWOOD MUSIC INC.; TOKECO TUNES; )<br>WACISSA RIVER MUSIC;  UNIVERSAL-SONGS OF )<br>POLYGRAM INTERNATIONAL, INC.; FUEL )<br>PUBLISHING INC. d/b/a PENER PIG PUBLISHING )<br>SONGS OF UNIVERSAL, INC.; ESCATAWPA SONGS; )<br>INTERIOR MUSIC CORP.; MUSIC SHOALS SOUND )<br>PUBLISHING CO.; PEERMUSIC III, LTD.; EMBASSY )<br>MUSIC CORPORATION; and RETRIBUTION MUSIC, )<br><br>            Plaintiffs,                                        )<br><br>                   v.                                              )<br><br>C.B.G., INC. d/b/a/ BEEMERS PUB RESTAURANT )<br>& LOUNGE, and PETER C.  COTE, individually, )<br><br>            Defendants.                                     ) | **CIVIL ACTION<br>NO. 11-40142-TSH** |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  (Docket No. 40)
### November 15, 2013

**HILLMAN, D.J.**


### Background

Plaintiffs Broadcast Music, Inc. ("BMI"), Sony/ATV Songs LLC, Velvet Apple Music,

Warner-Tamerlane Publishing Corp., Cyanide Publishing, Ratt Music, Time Coast Music,

Rightsong Music, Inc., Shirley Eikhard USA Music, EMI Blackwood Music, Tokeco Tunes,

Wacissa River Music, Universal-Songs of Polygram International, Inc., Fuel Publishing, Escatawpa Songs, Interior Music Corp., Music Shoals Sound Publishing Co., Peermusic III, Ltd., Embassy Music Corporation, and Retribution Music (collectively, "Plaintiffs") brought suit alleging copyright infringement against C.B.G. Inc. ("CBG") and Peter C. Cote ("Cote") (collectively, "Defendants"). Plaintiffs now move for Summary Judgment in Plaintiffs' Motion for Summary Judgment (Docket no. 40), seeking summary determination that: (1) Defendants have infringed the copyrights identified in Plaintiffs' Amended Complaint on the dates in question; (2) such infringement was willful; (3) Defendants are jointly and severally liable for such infringement; and (4) Plaintiffs are entitled to statutory damages from defendants in the amount of $2,500 per work infringed for a total award of $35,000. For the reasons set forth below, Plaintiffs' motion for summary judgment is granted, and Plaintiff is entitled to statutory damages in the amount of $1,500 per work infringed for a total award of $21,000.

## Facts

BMI is a non-profit "performing rights society" that licenses the right to publicly perform copyrighted musical works on behalf of the owners of those works. BMI acquires non-exclusive public performance rights from such owners, and has acquired these rights from each of the other plaintiffs in this action. BMI then grants music users, such as owners and operators of restaurants and nightclubs, the right to publicly performs works in BMI's repertoire though "blanket license agreements." BMI currently licenses the public performance of over 7.5 million musical works. BMI distributes all income, after deducting operating expenses and reasonable reserves, to the owners of the musical works, such as the other plaintiffs in this case.

CBG and Cote, the Treasurer and sole Director of CBG, owned, operated, and controlled Beemers Pub in Fitchburg, Massachusetts at all times relevant to this case. Sometime before

March 24, 2010 BMI discovered that music was being performed at Beemers Pub without a license from BMI or other permission from the copyright owners. On March 24, 2010 BMI sent Defendants a letter explaining that a license was required to publically perform BMI music. Over the next 14 months, BMI sent 34 additional letters and emails regarding licensing. Letters sent in January and March 2011 explicitly warned Defendants about copyright infringement. BMI also made 47 telephone calls to Beemers Pub to explain the need for a license. BMI staff spoke to Cote personally about this issue six times.

By April 2011 Beemers Pub still did not have a license to play BMI music. BMI sent David Mosley to visit Beemers Pub and make an audio recording and written report of the music performed. Mr. Mosley did so on the evening of April 26, 2011 through the early morning of April 27, 2011. During this visit eight songs licensed by BMI were performed. On May 10, 2011 BMI sent Defendants a letter informing them of the investigation and giving them another chance to enter a licensing agreement with BMI. Defendants did not do so, and on June 20, 2011, Plaintiffs filed this suit.

Incredibly, over the next 16 months Beemers Pub continued to have live music performances without a license from BMI. On October 19, 2012 BMI sent Damon Wallace to Beemers Pub to make an audio recording and written report of the music performed. On this date six songs licensed to BMI were played.

CBG is presently licensed by BMI

## Discussion

### *Standard of Review*

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1968).   It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.,* 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex,* 477 U.S. at 325).   When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).

*Infringement*

To establish a case of copyright infringement based on a public performance "a plaintiff must demonstrate (1) originality and authorship of the work involved; (2) compliance with all formalities required to secure a copyright under the Act; (3) plaintiff's ownership of the copyright in question; (4) public performance of the work; and (5) lack of authorization for the performer to perform the work." *Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc*., 855 F. Supp. 1314, 1320 (D. Mass. 1994) (citing 17 U.S.C. §§ 101–106, 501).   The first three elements are not at issue here, as Plaintiffs' evidence, including Certificates of Registration establishes each of the first three elements, and Defendants do not refute any of them. *See* 17 U.S.C. 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first

4

publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

The BMI investigators' certified infringement reports and audio recordings of the performances sufficiently demonstrate the fourth element, public performance, of the 14 BMI songs. Defendants have no evidence on the summary judgment record refuting that the performances took place, and have admitted they do not know whether or not the BMI songs were played on the nights in question.  Defendants only argument here is that the recordings of the performances on those nights should be omitted from the record because they were obtained in violation of federal and state wiretapping statutes. This argument, while novel, is baseless as these were public performances, not private oral communications, that Plaintiffs agent was permitted to attend as a member of the public.  *See* 18 U.S.C. 2511(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication").  Even if Plaintiffs violated the state statute, suppression of the evidence is not appropriate.  *See* M.G.L.  c. 272 § 99 (providing for suppression of evidence in criminal trials only).  Moreover, even if this Court omitted the audio recordings from the record, the written reports of Plaintiffs' agents adequately show BMI songs were performed at Beemers Pub on the nights in question.

Defendants argue that there exists a genuine issue of material facts on the fifth element, lack of authorization for the performer to perform the work. Defendants do not have evidence showing, nor do they claim, that they had a license for the public performance of the works BMI has shown were played on the nights in question. Instead, Defendants argue that the performer hired by Defendants may have been licensed, and that the songs performed were owned by the American Society of Composers, Authors and Publishers ("ASCAP"), another performing rights

organization, which did have a licensing agreement with Defendants. The record supports neither

of these arguments. The uncontroverted declaration of BMI Assistant Vice Present Lawrence E.

Stevens explains that the performers at Beemers Pub on the nights in question were not licensed

by BMI, as BMI licenses premises where music is performed rather than individual disc jockeys.

The claim that the songs were ASCAP rather than BMI songs is similarly unsupported by the

evidence. Defendants have submitted evidence merely showing that songs with similar titles to

those performed are licensed by ASCAP; none of the songs Defendants found on the ASCAP

database are the songs that BMI has demonstrated were played at Beemers Pub. There is no

question that the public performances in question occurred and constituted copyright

infringement of 14 musical works licensed to BMI.

*Vicarious Liability*

Defendants argue that even if copyright infringement occurred, there is an issue of fact

regarding whether Defendants, especially Cote, are vicariously liable.  A corporate officer is

jointly and severally liable with his corporation for the infringing acts of another if he has "1) the

right and ability to supervise the infringing activity of the other and 2) an obvious and direct

financial interest in the exploitation of the copyrighted materials." *Rosenthal v. MPC*

*Computers, LLC*, 493 F. Supp. 2d 182, 189 (D. Mass. 2007) (internal quotations omitted).  It is

clear from the record that the second prong is met. CBG and Cote both admitted to having a

direct financial interest in Beemers Pub in Defendants' Responses to Plaintiffs Request for

Admissions. Defendants argue, however, that because Beemers Pub did not have a cover charge

they did not have a financial interest in the exploitation of the copyright materials. This argument

has been explicitly rejected by the Supreme Court, with Justice Holmes noting that "[i]f the

rights under the copyright are infringed only by a performance where money is taken at the door,

they are very imperfectly protected" and that musical performances at restaurants are "part of the total for which the public pays" whether at the door or by ordering food and drink. *Herbert v. Shanley Co.,* 242 U.S.C 591, 594-5 (1917).

Defendants claim the first prong is not met because the performer was an independent contractor who Defendants did not have control over and because Defendants sent letters to their performers instructing the performers not to play BMI music.  Neither of these arguments helps Defendants. Courts have consistently found, in what are known as the "dance hall" cases, that owners and operators of establishments where music is played are vicariously liable when the hired performer commits copyright infringement.  *Shapiro, Bernstein & Co. v. H.L. Green Co*., 316 F.2d 304, 307 (2d Cir.1963) ("the cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income.").  In such cases, "[t]he courts have rejected the independent contractor theory" because "[t]he proprietor of a public establishment operated for a profit could otherwise reap the benefits of countless violations by orchestras, itinerant or otherwise, by merely claiming ignorance that any violation would take place." *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n, Inc*., 554 F.2d 1213, 1215 (1st Cir. 1977); *see Shapiro*, 316 F.3d at 307 ("[The owner and operator] is liable whether the bandleader is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection."); *M. Witmark & Sons v. Tremont Social and Athletic Club*, 188 F.Supp. 787, 790 (D.Mass.1960) ("It is well settled that the proprietor of an establishment cannot escape liability for a copyright violation on the ground that the person furnishing the performance is an independent contractor

who selects the compositions to be played.").  The case law is clear that when a venue hires a performer to play music, it will be held to have sufficient ability to supervise that the venue can be held liable for any copyright infringement.  Thus Defendants are still liable for the infringing activity of a DJ they hired to play at their restaurant even though the DJ may be considered an independent contractor and the Defendants did not select the music to be played

Defendants next argue that they should not be held liable because they instructed their hired performers not to play any BMI songs. In *Shapiro, Bernstein & Co. v. Veltin* the Court rejected this same argument.  47 F. Supp. 648, 649 (W.D. La. 1942).  In this case, the Defendant posted notices stating that he objected to any ASCAP music being played and had the musicians playing at his club signs contracts stating that they would refrain from playing ASCAP music.  *Id*.  The Court still found the club owner liable for copyright infringement, nothing that "the master is civilly liable in damages for the wrongful act of his servant in the transaction of the business which he was employed to do, although the particular act may have been done without express authority from the master, or even against his orders."  *Id.*  Similarly, the Court in *Warner Bros., Inc. v. O'Keefe* found that "[s]pecific instructions to the performers not to play ASCAP songs will not relieve a defendant of liability if in fact the songs were performed."  468 F. Supp. 16, 20 (S.D. Iowa 1977); *see also KECA Music, Inc., v. Dingus McGee's Co.*, 432 F.Supp. 72, 74-75 (W.D.Mo.1977) ("the owner of an establishment who hires a performer who gives an unlicensed performance of a musical composition is liable as an infringer even if the performer acted in specific derogation of directions by the owner not to play copyrighted compositions.").  The case law is clear; when an owner of a venue hires a musical performer, he can be held vicariously liable for that performer's acts of copyright infringement, even though the

performer is an independent contractor and even if the owner specifically instructs the performer

not to play songs licensed by a particular group.

*Damages*

The summary judgment record demonstrates that Defendants' hired performer committed

copyright infringement of 14 songs licensed to BMI and that Defendants are vicariously liable.

The Plaintiffs seek $2,500 in damages for each of the 14 proven acts of infringement, totaling an

award of $35,000. Plaintiffs have elected to recover statutory damages under 17 U.S.C. §

504(c)(1). Under this statute, the Court may award not less than $750 or more than $30,000 per

infringement of a work, "as the court considers just."  17 U.S.C. § 504(c)(1).  If a plaintiff shows

the defendant committed the infringement willfully, "the court in its discretion may increase the

award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  On the

other hand, if the defendant can prove he was unaware his acts constituted copyright

infringement "the court in its discretion may reduce the award of statutory damages to a sum of

not less than $200."  *Id*.

Plaintiffs suggest the violations in this case were willful, and therefore asking for $2,500

per work for a total of $35,000 is reasonable in light of the possibility that the Court could award

up to $150,000 for willful infringement or up to $30,000 per work even if the infringement was

not willful. Defendants argue that if they are liable for infringement, the infringement was

innocent rather than willful, so the Court should reduce the damages to below the statutory

minimum. The amount awarded in statutory damages is left to the court's discretion.  17 U.S.C. §

504(c)(1)-(2); *see Sixx Gunner Music v. The Quest, Inc.,* 777 F. Supp. 2d 272, 274 (D. Mass.

2011) ("Where, as here, no proof of actual damage is offered, the issue of statutory damages is

resolved by the discretionary judgment of the district court.").  Among the factors the court can

consider are "(1) expenses saved and profits reaped by the defendant, (2) revenues lost by the plaintiffs, (3) the deterrent value of the award, and (4) whether the infringement was willful or innocent." *Polygram Int'l Publishing, Inc.*, 855 F.Supp. at 1335.  It is clear that Defendants willfully infringed by continually refusing to obtain a license despite BMI's many calls and letters warning about the risk of infringement and offering to enter into a licensing agreement with Defendants.  Plaintiff has not put forward evidence regarding expenses saved by Defendants or revenue lost by Plaintiffs. In light of these facts, statutory damages of $1,500 per work infringed are appropriate.

Infringement can be found willful when Defendants know that a performance would be infringing, that there is a risk the performance will take place, and Defendants act with reckless disregard toward that risk and plaintiffs' rights.  *Fitzgerald v. CBS Broadcasting, Inc*., 491 F.Supp.2d 177, 191 (D. Mass. 2007).  Courts have found that the refusal to obtain a license for public performance of songs despite repeated warnings that a failure to do so creates the risk of copyright infringement meets this standard.  *Broadcast Music, Inc. v. McDade & Sons, Inc*., 928 F. Supp. 2d 1120, 1134 (D. Ariz. 2013) ("The record reflects that Defendants' infringements were knowing and willful….BMI repeatedly notified Defendants of the need to enter into a blanket license agreement, but Defendants declined to do so."); *see Broad. Music, Inc. v. Diamond Inv., Inc.,* 2013 WL 1681151 (S.D. Ind. 2013) (finding "[t]he record supports a finding that Defendants deliberately violated Plaintiffs' rights" when BMI contacted defendants by letter and telephone for over a year advising them of necessity of license.); *EMI Mills Music, Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 73 (D.P.R. 2006) (finding infringement "deliberate and willful" when Defendants did not obtain a license for performance of music at their hotel despite repeated contact from ASCAP about necessity of license).  After being repeatedly warned by

BMI of the risk of copyright infringement if one of BMI's over 7.5 million songs were publically performed without a license and having suit brought against them for copyright infringement Defendants refusal to enter a licensing agreement for over a year and a half constitutes willful infringement.

In cases where defendants have shown a "knowledgeable policy of avoiding a licensing arrangement," whether or not an explicit finding of willfulness was made, courts have awarded damages in the $2,500 range and above. *Brockman Music v. Mass Bay Lines, Inc*., 1988 WL 90833, *2 (D. Mass. 1988) (awarding $2,600 per infringement based on defendant's refusal to obtain ASCAP license); *see* Granite Music Corp. v. Ctr. St. Smoke House, Inc., 786 F. Supp. 2d 716, 734-35 (W.D.N.Y. 2011) (awarding $10,000 in statutory damages per infringement, "given Defendants' obstinate refusal to execute any licensing agreement, despite repeated invitations by ASCAP to do so, accompanied by unsolicited advice from ASCAP that the failure to execute the licensing agreement would likely result in liability under the Copyright Act"); *EMI Mills Music,* 470 F. Supp. 2d at 75-6 (awarding statutory damages of $15,000 per infringement when "Defendants repeatedly rejected and ignored ASCAP's offerings and acted as if they were not subject to the copyright laws").  In this case the record shows repeated efforts by BMI to offer a license to Defendants and warn Defendants about the risk of copyright infringement if Defendants did not enter a licensing agreement. Despite these efforts, Defendants continued to have musical performances in their establishment without a license from BMI, even after BMI instituted this lawsuit, at least one of which involved BMI music. Therefore this Court finds statutory damages of $1,500 for each of the 14 proven acts of infringement, or $21,000 total, are appropriate in this case.

## Conclusion

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (Docket No. 40) is **granted** and the Plaintiffs are awarded $1,500 for each of the 14 acts of infringement for a total of $21,000.


SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**